NICHOLS v. NICHOLS.

DEEDS—RESTORATION—EVIDENCE.

In suit to reestablish deeds which had been executed by husband incident to modification of provisions as to division of property in decree of divorce pursuant to stipulation of the parties and which had been left with an attorney to record after a loan had been effected and was to encumber the properties involved, evidence showing that husband obtained possession of the deeds and destroyed them after he had surrendered control over them entitled plaintiffs' to a restoration of the deeds and accounting as to a portion of the income.

Appeal from Ottawa; Miles (Fred T.), J. Submitted June 4, 1941. (Docket No. 48, Calendar No. 41,592.) Decided September 2, 1941. Rehearing denied October 6, 1941.

Bill by Jessie Nichols and others against George C. Nichols and others to establish deeds, for an accounting and other relief. Decree for plaintiffs. Defendants George C. Nichols and Winifred Nichols appeal. Affirmed.

*Francis L. Williams* and *Williams, Stiles & Tubbs,* for plaintiffs.

*John M. Dunham,* for defendants and appellants.

BOYLES, J. This is a bill in chancery to reestablish certain conveyances of real estate, for an accounting, and to determine the rights of plaintiffs, if any, in certain personal property. Plaintiff Jessie Nichols is the mother of plaintiffs Herbert Nichols and Corinne Opdyke, and the former wife of defendant George C. Nichols. Defendant Winifred Nichols is the present wife of George C. Nichols.

Destruction of ownership, see Restatement, Restitution, § 131.
Value of benefit, measure of recovery, see Restatement, Restitution, § 150.

The lower court entered decree for plaintiffs restoring the deeds, from which defendants George C. and Winifred Nichols appeal.

In 1928, Jessie Nichols was granted a *pro confesso* divorce from George C. Nichols in Kent county. A written property settlement had been signed by the parties and was incorporated in full in the decree as a part thereof. At the time, the parties were owners of considerable real estate, most of it heavily incumbered. In the decree, it is referred to as parcels 1 to 6, inclusive. Parcel 1 is an apartment property on Crescent street, Grand Rapids; parcel 2 is a theatre property on Monroe avenue; parcel 3 is a 70-acre farm in Ottawa county, called the Angell farm; parcel 4 is a 34-acre farm in Ottawa county, called the Meidertsma farm; parcel 5 is a certain part of what was called the Nichols farm in Tallmadge township, Ottawa county; and parcel 6 is a certain other and smaller part of this same Nichols farm. Parcels 1 to 4, inclusive, were heavily incumbered. The Nichols farm (parcels 5–6) was free and clear. All these parcels were accurately described in the agreement made a part of the decree. In an effort to save the properties from foreclosure and to secure for Jessie Nichols the payment of certain sums as alimony, the agreement and decree provided as follows: Jessie Nichols agreed to deed to George C. Nichols all right, title and interest in parcels 1 to 5, inclusive, subject to existing incumbrances which George C. was to assume and pay; George C. agreed to deed to Jessie parcel 6, together with certain easement rights in and over parcel 5. Each party agreed to execute the necessary deeds and conveyances. Provision was made for recording the decree; the record is silent as to whether the deeds were executed and recorded. The decree further provided that George C. was to pay

Jessie $1,500 forthwith, $1,500 within 60 days, and $17,500 at the rate of $1,750 per year, with interest. To secure the payment of this $17,500, the decree gave Jessie a lien in the nature of a mortgage on parcels 1 to 5, inclusive, subject to the then existing mortgages. The decree further provided "It is contemplated" that George C. might sell a portion of the property received by him, that Jessie would release her lien and all claims to the property thus sold on condition that she be paid half of the purchase price after payment of the mortgages and expenses of sale, and Jessie was not to release her lien until she had received such half. These provisions were not to operate to release George C. from the annual payment of $1,750. This agreement embodied in the decree was declared to be in full satisfaction of all claims which Jessie might have for alimony, costs, dower and homestead rights, or otherwise.

Early in 1932, George C. Nichols became unable to take care of the mortgage requirements and meet the payments to plaintiff as required by the decree. Some mortgages became in default and one or more foreclosure proceedings were started. In February, 1932, George C. Nichols filed a petition for modification of the decree. In the meantime, a few days after the decree was granted, he had remarried, defendant Winifred Nichols having become his wife. Negotiations were carried on between counsel for both parties toward modifying the decree and saving the properties. In April, 1932, the court filed an opinion on the petition to modify, to the effect that modification would be permitted and that proofs might be taken to establish what would be proper. Shortly afterward an agreement was entered into between the parties which becomes the subject matter of the present controversy. De-

fendants George C. and Winifred Nichols conveyed the Meidertsma farm and the Nichols farm to one Mr. Cully, an attorney in the office of their counsel, Mr. Dunham. As a part of the same transaction, Mr. Cully executed quitclaim deeds to these farms to the three children of George C. and Jessie Nichols as tenants in common, subject to a life estate in one-half of the property to Jessie and a life estate in the other half to George C. and Winifred. The deeds were left in the attorney's office. The record amply supports the finding of the circuit judge as to the agreement between the parties when these deeds were executed. They were delivered into the hands of an attorney in Mr. Dunham's office with the understanding that George C. Nichols was to obtain a loan from the Federal Land Bank and when that had been done the deeds were to be recorded. Defendants admit that these deeds were executed and placed in the hands of Mr. Cully or someone else in Mr. Dunham's office, subject to certain conditions to be performed. The conditions were that Mr. Nichols was to obtain a loan and, as soon as that was done, notify his attorney and the other parties, whereupon they were to record the deeds. In order to obtain the loan, it was necessary that Jessie release her lien on these properties securing payment to her of the $17,500. She did so, a stipulation was filed, and an order entered in the divorce case to that effect releasing all further claims in her behalf. George C. Nichols thereafter secured the loan from the Federal Land Bank, pocketed $553 received in excess of the liens and failed to notify Mr. Dunham or his office, or the other parties. Information of the loan was obtained by correspondence with the register of deeds of Ottawa county. Shortly thereafter Mr. Cully left Dunham's employ. In 1939, George C. Nichols went to the office of his

attorney, obtained possession of the deeds which had been left with Mr. Cully, which deeds were still in the office of his attorney, and destroyed them. Plaintiffs' suit is for the purpose of reestablishing and restoring these deeds, and for an accounting.

At the time these deeds were left with Mr. Nichols' attorney in 1933, the situation was further complicated by a lease under which plaintiff Herbert Nichols became a farm tenant on one or more of the farm properties. Disagreements arose between George C. Nichols and Herbert Nichols as to the methods of operation under this lease and as to accounting for the proceeds. A suit was started by Herbert Nichols against George C. for an accounting, a receiver was appointed, and this suit involving the farm lease was consolidated and heard in the circuit court with the case involving the deeds which are the subject of this opinion. The court below filed a single opinion deciding both issues, and a decree was entered dismissing the bill for an accounting in the lease case and granting plaintiffs in the case now before us the relief sought, viz., the reestablishment of the deeds left with Mr. Cully. Plaintiffs in the lease case appealed, and defendants appealed in the deed case at bar. For some reason these appeals were not consolidated and the record in the instant case is replete with testimony, argument, findings, and a decree concerned largely with the other appeal and which has no bearing upon the decision in this case. It does appear, however, that George C. Nichols, defendant in the lease case, became embittered toward Herbert Nichols over the accounting under the farm lease and for that reason went to his attorney's office, obtained possession of the deeds here involved, and destroyed them.

It is the claim of appellants that George C. Nichols had the right to recall the deeds and to

destroy them. The testimony of all the attorneys who took part in the conferences and in concluding the agreement was taken and appears in the record. George C. Nichols in part corroborated plaintiffs' view of the agreement. The record fully supports the conclusion reached by the circuit judge that these deeds were left with Mr. Cully temporarily, to be recorded by him after the loan was secured, and that George C. Nichols had no further control over them and had no right to these deeds. To hold otherwise would mean that the plaintiff Jessie Nichols had been successfully defrauded out of her rights to the property, and that George C. Nichols might reap a benefit from his violation of the agreement between the parties. The circuit judge required defendants to restore the deeds, to accord Jessie her right to the use of the property, and to account to her for one-half of the income. The court gave careful consideration to the matter, had the opportunity of seeing and hearing the witnesses, and we find no reason for disturbing the decree. We do not pass upon that part of the decree involving the controversy over the farm lease.

Decree affirmed, with costs to appellees.

SHARPE, C. J., and BUSHNELL, CHANDLER, NORTH, STARR, WIEST, and BUTZEL, JJ., concurred.